UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DOROTHY D'AMATO,

                                    Plaintiff,

            – against –

FIVE STAR REPORTING, INC. and MICHAEL
RAFKIND,

                                    Defendants.

Case No.: 12-CV-3395 (ADS)(AKT)

## PLAINTIFF'S MEMORANDUM OF LAW SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Saul D. Zabell, Esq.
ZABELL & ASSOCIATES, P.C.
1 Corporate Drive, Suite 103
Bohemia, New York 11716
Tel.: (631) 589-7242
Fax: (631) 563-7475
Szabell@laborlawsny.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................i-ii

I.   **INTRODUCTION** ....................................................1

II.  **STATEMENT OF FACTS** ........................................2

    1.  Share Purchase Agreement ....................................2

    2.  Employment Agreement ........................................3

III. **LEGAL STANDARD** .............................................4

IV.  **ARGUMENT** ...........................................................5

    POINT I

    BREACH OF CONTRACT ...........................................5

    1.  Breach of Share Purchase Agreement ..................6

    2.  Breach of Employment Agreement .....................6

    POINT II

    FAILURE TO PAY OVERTIME WAGES ...................9

    POINT III

    FAILURE TO PAY COMMISSIONS ........................11

    POINT IV

    RETALIATION...........................................................14

    POINT V

    DEFENDANTS' COUNTERCLAIMS ARE WITHOUT MERIT.......................17

V.   **CONCLUSION** ......................................................19

## TABLE OF AUTHORITIES

**FEDERAL COURT CASES**

**United States Supreme Court**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)..4, 5

**United States Court of Appeals**

Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000) ...........................................16

Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007) .................................................................5

Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996) ...............................................................5

McCarthy v. Am. Int'l Group, Inc., 283 F.3d 121, 124 (2d Cir.2002) ........................................11

Redd v. New York Div. of Parole, 678 F.3d 166, 173–74 (2d Cir. 2012)......................................4

Seiden Associates v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir.1992) ..............................11

Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) ......................................................5

Zann Kwan v. Andalex Group LLC, 737 F3d 834, 843 (2d Cir. 2013) ..........................................5

**Federal District Court**

Angle of Attack Land Surveying, LLC v. Handex of New Jersey, Inc., 03-CV-3987 (TCP) (WDC), 2006 WL 1318384 (E.D.N.Y. May 12, 2006) ...................................................................5

Brown v. Mustang Sally's Spirits & Grill, Inc., No. 12 Civ. 529S (WMS), 2012 WL 4764585, at *4 (W.D.N.Y. Oct. 5, 2012) ........................................................................................................17

Delville v. Firmenich, Inc., 920 F. Supp. 2d 446, 465 (S.D.N.Y. 2013) .....................................16

Harper v. Govt. Employees Ins. Co., 163 Lab. Cas. P. 36177 (E.D.N.Y. Nov. 4, 2013) .............10

Jacques v. DiMarzio, 200 F. Supp. 2d 151, 162-63 (E.D.N.Y. 2002) .........................................16

Spencer v. Int'l Shoppes, Inc., No. 06 Civ. 2637 (JS) (MLO), 2010 WL 1270173, at *12 (E.D.N.Y. Mar. 29, 2010) ..........................................................................................................16

Tagare v. NYNEX Network Sys. Co., 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996)..........................5

Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008) ..............16, 17

**NEW YORK STATE COURT**

Pachter v. Bernard Hodes Grp., Inc., 10 N.Y.3d 609, 618 (2008) ...........................................12, 13

Srour v. Dwelling Quest Corp., 5 N.Y.3d 874, 875 (2005) .........................................................13

**STATUTES & REGULATIONS**

29 C.F.R. § 541.200(a) ...........................................................................................................10

29 U.S.C. 201 et seq. .............................................................................................................9

29 U.S.C. § 207(a)(1) (2010) ..................................................................................................9

## I.   INTRODUCTION

Plaintiff, **DOROTHY D'AMATO**, (hereinafter "Plaintiff" or "D'Amato"), respectfully submits this memorandum of law in support of Plaintiff's motion for summary judgment brought pursuant to Fed. R. Civ. P. 56.

Plaintiff commenced the instant action by filing a Summons and Complaint on or about July 10, 2012. [ECF Doc. 1] (Pl. Ex. F)  On September 21, 2012, Defendants filed their Answer to Plaintiff's Complaint which included counterclaims.  [ECF Doc. 6] (Pl. Ex. G)  Plaintiff filed her Answer to Defendants' counterclaims on October 19, 2012 and subsequently amended her Complaint on or about December 21, 2012.  [ECF Doc. 10, 19]  (Pl. Exs. N and H)  Defendants filed their Answer to the Amended Complaint on January 18, 2013.  [ECF Doc. 22]  (Pl. Ex. E)

In her Amended Complaint, Plaintiff alleged Defendants breached the terms and conditions of two (2) separate valid and enforceable contracts, the "Employment Agreement" and the "Share Purchase Agreement", violated the New York State Labor Law ("NYLL") by failing to pay earned commissions and overtime wages, violated the Fair Labor Standards Act ("FLSA") by failing to pay earned overtime wages, and retaliated against her in violation of the NYLL and the FLSA.

Plaintiff now moves for summary judgment on each cause of action as well as Defendants' counterclaim.  As set forth in greater detail below, Plaintiff's motion for summary judgment should be granted in its entirety because admissible evidence confirms no material issues of fact are in dispute with respect to any claim.

## II.   STATEMENT OF FACTS

The material facts in this case are undisputed and are attached herewith in Plaintiff's 56.1 statement. The parties did not engage in depositions. Consequently, the facts are based upon Plaintiff's Statement of Facts provided in accordance with Local Civil Rule 56.1, Plaintiff's Affidavit dated May 5, 2014, and a series of documents annexed to the Declaration of Saul D. Zabell, dated May 6, 2014, as exhibits "A" through "O". In addition to the facts contained therein, Plaintiff provides the following overview of facts relevant to the arguments contained within this memorandum of law.

**Share Purchase Agreement**

On or about August 31, 2010, Plaintiff entered into a Share Purchase Agreement ("Purchase Agreement") with the individually named Defendant, Michael Rafkind (on behalf of Reporter's Ink Corporation), whereby Plaintiff, along with shareholders Lisa Lugo ("Lugo") and Adrienne Militello ("Militello") (collectively, "the sellers"), sold her shares of common stock of Five Star Reporting, Inc. ("Five Star") to Defendant Rafkind. (Pl. Ex. B)   Pursuant to the Purchase Agreement, in exchange for Plaintiff's shares, Defendant Rafkind agreed to pay Plaintiff $500,000.00 in accordance with a structured payment plan. (Pl. Ex. B., pgs. 1-2) Additionally, Defendant Rafkind agreed to guarantee Plaintiff court reporting work for a minimum of $20,000 per year for the years 2011 through 2013. (Pl. Ex. B., pg. 3)

Prior to executing the Purchase Agreement, Defendants hired an outside expert to conduct a search of Five Star's records and computers and to create a Due Diligence Report (Pl. Aff. ¶ 39)  This report included information concerning Five Star's financial and tax records, including outstanding liabilities. (Pl. Ex. I) (Pl. Aff. ¶ 42) Defendants had the opportunity to review the findings outlined in the report and proceeded to purchase Five Star.  (Pl. Aff. ¶ 41) Importantly, in addition to a review of all relevant information bearing upon Five Star's financial condition, Defendant Rafkind and Plaintiff discussed all assets and liabilities at the closing. (Pl.

2

Aff. ¶ 44)  Defendant Rafkind agreed to incur and assume all outstanding debts and liabilities. (Pl. Aff. ¶ 44)  In fact, Mr. Rafkind deducted sums in excess of $28,000.00 at the closing to offset such indebtedness.  (Pl. Aff. ¶ 44)

**Employment Agreement**

On or about August 31, 2010, Plaintiff entered into an Employment Agreement with Defendants.  (Pl. Ex. A)  Pursuant to this agreement, Defendants agreed to employ Plaintiff for sixty (60) months for a base annual salary of $40,000 plus commissions at a rate of 10% for new sales generated each year and bonuses. (Pl. Ex. A. pgs. 1-2)  By signing this agreement, Plaintiff agreed to relinquish her right to $300,000 of the amount due and owing to her under the Purchase Agreement. (Pl. Ex. A. pg. 2)

As an employee of Defendants, Plaintiff's duties chiefly entailed soliciting business for Defendants by making phone calls and/or meeting with potential clients. (Pl. Aff. ¶ 14)    As such, Plaintiff spent a significant amount of time in Defendants' offices, making calls and working on the computer.  (Pl. Aff. ¶ 14)

Under the agreement, Plaintiff was required to work Monday through Friday from 9:00 a.m. until 6:00 p.m., a total of forty-five (45) hours per week.  (Pl. Ex. A. pg. 1)  However, Defendants never paid Plaintiff overtime wages for all hours worked over forty (40) hours.  (Pl. Aff. ¶ 12)    Further, Plaintiff generated new sales for Defendants during her tenure, but Defendants refused to pay Plaintiff her earned commissions for these sales.  (Pl. Aff. ¶ 22-23) Specifically, amongst other contracts, Plaintiff was responsible for procuring a contract with the Suffolk County Department of Public Works and significantly expanding an existing contract with the law firm Sahn Ward Coschignano & Baker, PLLC. (Pl. Aff. ¶ 19-21)  Plaintiff made

3

repeated requests for her commissions she earned pursuant to these sales, but to no avail. (Pl. Aff. ¶ 24-26)

On July 10, 2012, Plaintiff filed a Complaint, alleging, among other acts, that Defendants violated her rights under the FLSA and NYLL. [ECF Doc. 1] (Pl. Ex. F) In filing their Answer to the Complaint on October 19, 2012, Defendants asserted counterclaims against Plaintiff. [ECF Doc. 10] (Pl. Ex. G) These counterclaims form the basis of Plaintiff's retaliation claims. Specifically, Defendant Rafkind only commenced suit against Plaintiff in response to her filing the instant action. By way of contrast, in 2012, Defendant Rafkind was involved in a legal dispute with Plaintiff's two (2) former partners, Mmes. Lugo and Militello. (Pl. Aff. ¶ 47) In which, Mr. Rafkind had ample opportunity to proceed with any putative claim(s) against Plaintiff (as she was a participant in the underlying transaction forming the nature of the dispute), yet failed to do so. (Pl. Aff. ¶ 51) Conspicuously, Mr. Rafkind took no action. Mr. Rafkind instead waited until Plaintiff commenced her suit and filed counterclaims in the immediate aftermath. In response to this dubious filing, Plaintiff properly amended her Complaint to assert additional causes of action for retaliation under the FLSA and NYLL. [ECF Doc. 19] (Pl. Ex. H)

### III. LEGAL STANDARD

Fed. R. Civ. P. 56(a) provides that a motion for summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Redd v. New York Div. of Parole, 678 F.3d 166, 173–74 (2d Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

A genuine dispute of material fact "exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 843 (2d Cir. 2013) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)).

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (citing Anderson, 477 U.S. at 256, 106 S.Ct. 2505).

In this case, Defendants cannot establish the existence of a single issue of material fact in dispute. Thus, Plaintiff's motion for summary judgment should be granted in its entirety.

## IV. ARGUMENT

### Point I

### Breach of Contract

"In order to establish a breach of contract claim, a plaintiff must establish: (i) the existence of an agreement; (ii) adequate performance by plaintiff; (iii) breach of contract by the defendant; and (iv) damages." Angle of Attack Land Surveying, LLC v. Handex of New Jersey, Inc., 03-CV-3987 (TCP) (WDC), 2006 WL 1318384 (E.D.N.Y. May 12, 2006) (citing Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996) (citing Tagare v. NYNEX Network Sys. Co., 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996)). Here D'Amato and Defendants entered into two (2) binding contracts. Defendants breached both of these contracts, resulting in damages to D'Amato.

## 1. Breach of Share Purchase Agreement

There can be no legitimate argument advanced by Defendants that they did not breach the Purchase Agreement by failing to provide Plaintiff with at least $20,000 worth of court reporting work per year for the years 2011 through 2013. (Pl. Ex. B., pg. 3)

First, Defendants admit that the Purchase Agreement was executed by both parties. (Pl. Ex. C at ¶ 5) As such, no further analysis on this element of Plaintiff's claim is warranted.

Second, there can be no dispute that D'Amato adequately performed her duties under the contract. Pursuant to the Purchase Agreement, D'Amato and the two (2) other sellers, Lugo and Militello, agreed to transfer their shares of common stock in Five Star to Defendant Rafkind on behalf of Reporter's Ink. (Pl. Ex. B at p. 2) Accordingly, D'Amato adequately performed under the contract by transferring her shares of common stock in Five Star Reporting to Defendant Rafkind. (Pl. Ex. B at p. 2)

Third, Defendants breached the contract by failing to provide D'Amato with a minimum of $20,000 of court reporting work for the years 2011 and 2012. (Pl. Aff. ¶ 21) By failing to adhere to the terms of the Purchase Agreement, Defendants caused damages to D'Amato in an amount no less than $40,000, reflecting $20,000 for the years 2011 and 2012. (Pl. Aff. ¶ 31) Therefore, the fourth prong of the breach of contract analysis is satisfied and summary judgment should be granted on Plaintiff's claim for breach of the Share Purchase Agreement.

## 2. Breach of Employment Agreement

Defendants cannot provide any evidence sufficient to overcome Plaintiff's claim that Defendants breached her Employment Agreement by failing to pay her commissions according to the terms of the contract.

First, there can be no dispute that D'Amato and Defendants entered into a binding and enforceable Employment Agreement, which remained in full force and effect throughout D'Amato's tenure. (Pl. Ex. A) (P. Ex. C at ¶¶ 1, 10)   Further, the Employment Agreement provides that "Employee will earn a 10% sales commission on the new sales generated in each calendar year for the years 2011, 2012, 2013, 2014, and 2015." (Pl. Ex. A) Therefore, this element of Plaintiff's contract claim is satisfied.

Second, it is indisputable that D'Amato adequately performed under the terms and conditions of the Employment Contact.  D'Amato satisfactorily performed all assigned job duties required under the contract. (Pl. Aff. ¶ 13)  D'Amato received no negative evaluation of her job performance during her tenure and procured significant business on behalf of Defendants. (Pl. Aff. ¶¶ 13, 19)   For example, D'Amato was personally responsible for procuring a new contract between Five Star Reporting and the Suffolk County Department of Public Works for the period between March 1, 2011 through February 28, 2012 (hereinafter the "Suffolk County Contract"). (Pl. Aff. ¶ 19) (Pl. Ex. K)  Consistent with her sales activities, D'Amato executed bid documents on Defendants' behalf in connection with the Suffolk County Contract. (Pl. Aff. ¶¶ 19-20)  (Pl. Ex. K)

D'Amato was also responsible for procuring a new Ordering Contract between Five Star Reporting and "Sahn Ward Coschignano & Baker, PLLC" (hereinafter the "Sahn Ward Ordering Contract").  (Pl. Aff. ¶ 21)  This contract significantly expanded and/or altered the amount of court reporting work Five Star previously performed for Sahn Ward.  (Pl. Aff. ¶ 21)  These contracts, in addition to other contracts procured by Plaintiff, constituted new sales for which Plaintiff was entitled to commissions at a rate of ten percent. (Pl. Aff. ¶ 22)

7

Third, Defendants breached the Employment Agreement by failing to pay Plaintiff commissions due and owing for the above-mentioned sales, as well as many other sales procured by Plaintiff. (Pl. Aff. ¶¶ 23, 26)   Plaintiff repeatedly demanded payment of her earned sales commissions from Defendants, however Defendants refused to pay Plaintiff pursuant to the terms of the Employment Agreement.  (Pl. Aff. ¶¶ 24-26)

In addition to the foregoing, Defendants cannot overcome the following indisputable facts with respect to the Suffolk County Contract which render their position on this issue wholly implausible:  Plaintiff developed and submitted Five Star Reporting's bid proposal for the Suffolk County Contract. (Pl. Aff. ¶¶ 19-20) (Pl. Ex. K)  She was also in attendance at the bid opening for the Suffolk County Contract on behalf of Defendants.  (Pl. Aff. ¶ 20)   (Pl. Ex. K) Further, Plaintiff accepted the Suffolk County Contract for Five Star Reporting on November 18, 2010. (Pl. Aff. ¶¶ 19-20) (Pl. Ex. K)

Despite these facts, Defendants refuse to pay Plaintiff her commissions earned pursuant to this sale, claiming that it was a "renewed" contact. (Pl. Aff. ¶¶ 23, 26)  (Defendants' 56.1 ¶¶ 37-41)  However, all of the evidence yields a contrary interpretation.  Specifically, when the Suffolk County Contract was ultimately renewed in 2012, the Notice of Contract referenced November 18, 2010 as the date the contract was opened. (Pl. Aff. ¶¶ 19-20) (Pl. Ex. K) (emphasis added)  Thus, this contract was in fact a "new sale" effectuated by Plaintiff on November 18, 2010 and, as such, Plaintiff is entitled to commission for this sale as provided in the Employment Agreement. (Pl. Aff. ¶¶ 19-20) (Pl. Ex. K) (See *infra* Point III, further discussing Plaintiff's entitlement to her earned sales commissions.)

Lastly, with respect to the fourth element of the analysis, Plaintiff can readily quantify her measure of damages which she sustained as a result of Defendants' breach of contract.  As to

8

Plaintiff's claim for breach of the Employment Agreement, Plaintiff is entitled to ten percent

sales commission on all new sales she generated while employed by Defendants, including, but

not limited to, the Suffolk County Contract and the Sahn Ward Ordering Contract.  (Pl. Aff. ¶

22)  Therefore, summary judgment should be granted on Plaintiff's claim for breach of the

Employment Agreement.

## Point II

### Failure to Pay Overtime Wages

During Plaintiff's tenure with Defendants, she was required to work at least forty-five

(45) hours per week.  (Pl. Ex. A. pg. 1) (Pl. Ex. J at ¶ 12)  (Pl. Aff. ¶ 10)  Despite this fact,

Defendants never paid Plaintiff overtime wages for all hours worked over forty (40) hours.  (Pl.

Aff. ¶ 12)

Section 207(a)(1) of the Fair Labor Standards Act ("FLSA") provides,

no employer shall employ any of his employees . . . for a workweek longer than
forty hours unless such employee receives compensation for his employment in
excess of the hours above specified at a rate not less than one and one-half times
the regular rate at which he is employed.

29 U.S.C. § 207(a)(1) (2010).

Similarly, under New York law, "[a]n employer shall pay an employee for overtime at a

wage rate of one and one-half times the employee's regular rate in the manner and methods

provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 et seq., the Fair

Labor Standards Act of 1938." 12 NYCRR 142-3.2.

The Employment Agreement required that D'Amato report to work from Monday

through Friday, 9 a.m. to 6 p.m., a total of forty-five (45) hours per week. (Pl. Ex. A at p 1)

Additionally, D'Amato often started working before 9 a.m. and would continue working past 6

p.m. (Pl. Ex. J at ¶ 12)  (Pl. Aff. ¶ 10)  However, Defendants failed to pay Plaintiff at rate not

less than one and one-half times her regular rate of pay for all hours worked in excess of forty (40) hours per week. (Pl. Ex. J at ¶¶ 11-12, 15) (Pl. Aff. ¶ 12)

Plaintiff's normal work day consisted of soliciting business for Defendants by contacting potential clients. (Pl. Aff. ¶ 14)   Occasionally, Plaintiff would be called upon to work as a court reporter.  (Pl. Aff. ¶ 17)  As such, Plaintiff was consistently busy and did not take formal lunch breaks, almost always working through lunch while eating at her desk.  (Pl. Aff. ¶ 9)

Plaintiff's work does not fall under any overtime exemptions provided by the FLSA.  As for the administrative exemption set forth in section 213(a)(1) of the FLSA,

> [t]he regulation defining administrative employees sets forth three requirements for the exemption to apply. Specifically, it must be found that:
> • the employee earns at least $455 per week;
> • the employee's "primary duty" is "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and,
> • the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."

Harper v. Govt. Employees Ins. Co., 163 Lab. Cas. P. 36177 (E.D.N.Y. Nov. 4, 2013) (citing 29 C.F.R. § 541.200(a)).

Plaintiff acknowledges that she was compensated at a rate of no less than $455 per week, however, her primary duties were entirely sales-based and Plaintiff's duties did not involve office or non-manual work directly related to the management or general business operations, or the exercise of discretion or independent judgment with respect to matters of significance. (Pl. Aff. ¶¶ 4, 14)  While Plaintiff held the title of "Manager of Sales and Customer Retention," she was a manager in title only. (Pl. Aff. ¶ 4)  Plaintiff's job duties were limited to soliciting business for Defendants and Plaintiff did not exercise supervision over any other employee of Defendants. (Pl. Ex. B at ¶ 3) (Pl. Aff. ¶¶ 4, 14)  In fact, consistent with Plaintiff's position, the Employment Agreement explicitly states "Employee will have no power to hire or fire employees except with

10

the approval of her supervisor." (Pl. Ex. A pg. 1) (Pl. Aff. ¶ 4)  Consequently, Plaintiff's primary

duties do not render her "exempt" from the FLSA overtime requirements.

As for the commissioned sales employee exemption, section 207(i) of the FLSA provides

in pertinent part,

> No employer shall be deemed to have violated subsection (a) of this section by
> employing any employee of a retail or service establishment for a workweek in
> excess of the applicable workweek specified therein, if (1) the regular rate of pay
> of such employee is in excess of one and one-half times the minimum hourly rate
> applicable to him under section 206 of this title, and (2) more than half his
> compensation for a representative period (not less than one month) represents
> commissions on goods or services.

29 U.S.C. § 207(i) (2010).

Here, D'Amato never received more than half of her compensation from sales

commissions. (Pl. Aff. ¶ 28)  D'Amato's base salary was $40,000 per year and, according to

commission reports supplied by Defendants, the most D'Amato earned for a period was

$2,702.43 for the period of August 3, 2011 through January 20, 2012. (Pl. Ex. M) (Pl. Aff. ¶ 7)

As such, Plaintiff cannot be found to be exempt under the commissioned sales employee

exemption.

No genuine issues of material fact can be found to exist with respects to Plaintiff's

overtime claims under the FLSA and NYLL, as such, Plaintiff is entitled to summary judgment

on these claims.

### Point III

### Failure to Pay Commissions

Upon submission, Plaintiff is owed substantial sums in the form of earned sales

commissions.  As set forth in Plaintiff's 56.1 Statement of Material Facts and her corresponding

May 5, 2014 Affidavit, Plaintiff generated substantial sales and revenue on behalf of Defendants.

11

Any issue regarding Plaintiff's entitlement to sales commissions in this case is what, in actuality, constitutes a "new sale".

First and foremost, Plaintiff's employment agreement is ambiguous as written, particularly as it relates to what constitutes a sale. (Pl. Ex. A)  Section IV (c) of the agreement, states that Plaintiff will be entitled to commissions on new sales she directly generated. (Pl. Ex. A)  The phrase "directly generated" is not defined.  However, by definition, ambiguous language is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Seiden Associates v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992).  Here, Defendants' inclusion of the phrase "directly generated" absent further clarification, can and has led to alternate interpretations.  On one hand, Defendants claim that for the Suffolk County and the Sahn Ward Contracts, Plaintiff merely serviced existing accounts; on the other hand, Plaintiff demonstrates entitlement to earned sales commissions because she either brought in the contracts or greatly expanded the existing scope of work. (Pl. Aff. ¶¶ 19-22)  Fortunately, the law in such a circumstance is clear: any ambiguity in a contract is interpreted against the drafter. See, e.g., McCarthy v. Am. Int'l Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002).  In light of this precept, Defendants, the drafting party, cannot rebut Plaintiff's argument that she directly generated these sales and therefore, is entitled to earned sales commissions.

Setting aside notions of contractual ambiguity, Defendants' denial of Plaintiff's earned sales commissions is wholly inconsistent with the governing tenants of state law.  Specifically, in Pachter v. Bernard Hodes Grp., Inc., the Court of Appeals found that a commission was earned when the Plaintiff's efforts resulted in a client's commitment to buy, finding that this was "most

12

consistent with the common-law 'ready, willing and able buyer' rule since the commitment of a client signaled its willingness to do business with the employer." 10 N.Y.3d 609, 618, 861 N.Y.S.2d 246 (2008). The Court held that a salesman "'who produces a person ready and willing to enter into a contract upon his employer's terms . . . has earned his commissions.'" Id. at 616-617 (quoting Srour v. Dwelling Quest Corp., 5 N.Y.3d 874, 875 (2005). The Court noted that the parties were free to contract around the common law rule, providing "that the computation of a commission will include certain downward adjustments from gross sales, billings or receivables." Pachter, 10 N.Y.3d at 616-617. The Court held that if the parties do so contract, the commission will not be deemed "earned or vested until computation of the agreed-upon formula." Id. In the absence of explicit contractual language to the contrary, a salesman's commissions must be considered "earned" when, like here, he produces a "ready, willing, and able" client who expresses a willingness to conduct business with the employer. Id.

Here, the parties entered into a binding Employment Agreement which governed the payment of Plaintiff's sales commissions. (Pl. Ex. A) The Employment Agreement established the timing of payment of commissions, but not when Plaintiff's commissions were earned (emphasis added). Instead, the Employment Agreement dictates how commissions are calculated and when they shall be paid. Pursuant to Pachter, in the absence of an agreement, commissions of a salesman are earned when he produces a buyer "ready, willing and able." Pachter, 10 N.Y.3d at 618. Here, Plaintiff procured a new contract with Suffolk County and secured a contract with Sahn Ward that was, in essence, so dissimilar from the scope of previous work that it more closely resembled a new contract rather than an existing contract.

Accordingly, Plaintiff has earned significant sales commissions and Defendants have failed to compensate Plaintiff for her earned commissions. As Plaintiff has earned commissions

13

and remains uncompensated, Defendants violated the terms of the Employment Agreement and Plaintiff is entitled to summary judgment.

## Point IV

## Retaliation

Plaintiff should be entitled to summary judgment on her retaliation claims arising under state and federal law (failure to pay wages – overtime and sales commissions). Specifically, as set forth in her pleading, Plaintiff was subject to the impermissible deprivation of earned compensation in the form of overtime pay and sales commissions. In response, Plaintiff was subject to unlawful retaliation in the form of counterclaims filed in the immediate aftermath of her commencing suit. (Pl. Ex. G) Plaintiff subsequently amended her Complaint to include claims of unlawful retaliation in violation of the FLSA and NYLL. (Pl. Ex. H)

The gravamen of Defendants' counterclaims is that Plaintiff breached the terms and conditions of the aforementioned Share Purchase Agreement by failing to disclose certain liabilities of the company upon the sale. Defendants claim that as a consequence, they were forced to expend significant sums to satisfy the debt. As set forth below, Defendants' position is flawed for several reasons.

Prior to effectuating the sale in question, Defendants retained an outside expert to perform a "Due Diligence Report". (Pl. Ex. I) The outside expert was granted access to all of Five Star's records, as well as all of the sellers' computers (including Plaintiffs). The report in question was commissioned and completed in advance of the sale. The Due Diligence Report confirms all tax records were produced and reviewed in advance of the transaction. Plaintiff disclosed, and Defendants were aware of all tax information and, by extension, indebtedness in advance of the sale of "Five Star Reporting, Inc." Importantly, in addition to a review of all

relevant information bearing upon Five Star's financial condition, Defendant Rafkind and Plaintiff discussed all assets and liabilities at the closing. Defendant Rafkind agreed to incur and assume all outstanding debts and liabilities. In fact, Mr. Rafkind deducted sums in excess of $28,000.00 at the closing to offset such indebtedness. (See Pl. Aff. ¶¶ 39-44)

Further, assuming *arguendo*, Defendants are correct and Plaintiff committed these alleged misdeeds, Defendants had every opportunity to commence an action upon the point of discovery, yet did so only after Plaintiff filed suit. This indisputable chronology of events yields one conclusion, Defendants retaliated against Plaintiff for the lawful assertion of her rights.

After the closing of the sale of Five Star, a legal dispute arose between the other two (2) sellers and Defendant Rafkind. Prior to this dispute, Defendant Rafkind had personally advised Plaintiff that he did not intend to pay the other two (2) sellers any portion of the $300,000 balance owed to each of them pursuant to the Share Purchase Agreement. Because Defendant Rafkind failed to pay the other sellers according the Share Purchase Agreement, a legal claim ensued and in order to settle this dispute, the other sellers and Defendant Rafkind executed an Amendment to Share Purchase Agreement. This occurred in April 2012. Through this amended agreement, the other sellers agreed to accept $255,000 each rather than $300,000 each. This reduction reflects the amount Defendant Rafkind believed he was owed for the alleged outstanding liabilities of Five Star – the very same liabilities for which he claims Plaintiff bears responsibility in Defendants' counterclaim. Although Plaintiff was not a party or a signatory to this agreement, she was present during the discussions concerning the dispute. Defendant Rafkind assured Plaintiff he would assume responsibility for any and all remaining liabilities attributable to Five Star and to Plaintiff, as a former shareholder. Importantly, at no point during these discussions or at any other time did Mr. Rafkind advise of his belief that Plaintiff owed him

15

any money or had committed any violation of the Share Purchase Agreement. (See Pl. Aff. ¶¶ 45-51)

In September 2012, Defendants filed their counterclaims – some five (5) months after the settlement of the dispute between Mr. Rafkind and Plaintiff's two (2) former partners. Defendants cannot account for the passage of such a significant amount of time between the genesis of their purported causes of action and their actually commencing suit – particularly considering the fact Plaintiff filed her suit in the intervening time period.   Clearly, but-for Plaintiff commencing suit, Defendants would not have sought legal redress.   This, we posit, is the very definition of unlawful retaliation.

Under some circumstances, lawsuits in response to a former employee's protected behavior have been held to constitute retaliation." Delville v. Firmenich, Inc., 920 F. Supp. 2d 446, 465 (S.D.N.Y. 2013). For example, "[c]ourts have held that baseless claims or lawsuits designed to deter claimants from seeking legal redress constitute impermissibly adverse retaliatory actions, even though they do not arise strictly in an employment context." Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 472 (S.D.N.Y. 2008) (citing, inter alia, Jacques v. DiMarzio, 200 F. Supp. 2d 151, 162–63 (E.D.N.Y. 2002) (discussing the in terrorem effect that a bad faith counterclaim upon employees who might otherwise seek to vindicate their legal rights)). Some courts in the Second Circuit have held that "[e]ven if the litigation is not frivolous, it still may be considered retaliatory if motivated, even partially, by a retaliatory animus." Spencer v. Int'l Shoppes, Inc., No. 06 Civ. 2637 (JS) (MLO), 2010 WL 1270173, at *12 (E.D.N.Y. Mar. 29, 2010) (citing Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)); see Delville, 920 F. Supp. 2d 446, 465 (S.D.N.Y. 2013) ("This Court does not believe

that Defendant's counterclaims are all baseless, and thus it is unclear whether Defendant's suit can amount to retaliation as a matter of law.").

However, other courts have held that "there is nothing inherently retaliatory in raising counterclaims **unless such claims lack a reasonable basis in fact or law**." Brown v. Mustang Sally's Spirits & Grill, Inc., No. 12 Civ. 529S (WMS), 2012 WL 4764585, at *4 (W.D.N.Y. Oct. 5, 2012) (citing Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 472-73 (S.D.N.Y. 2008)) (emphasis added).

Here, Defendants will invariably mount a defense to these arguments predicated upon the presumptive legitimacy of their legal position, as set forth above, a review of the material facts confirms an absence of any reasonable basis. Again, the underlying issue was contemplated by all parties, a dispute ensued surrounding the sale of "Five Star" which did not include Plaintiff and further, Defendant Rafkind adjusted the terms and conditions of the sale to reflect (and eventually recoup) the same liabilities he subsequently endeavored to place at Plaintiff's door step. The particulars mandate that Defendants' actions be deemed retaliatory in nature and thus, Plaintiff is entitled to summary judgment on her claims.

## Point V

## Defendants' Counterclaims are without Merit

As discussed above, Defendants asserted counterclaims with their Answer to Plaintiff's Complaint. [ECF Doc. 6] (Pl. Ex. G)  These counterclaims concern the alleged pre-acquisition liabilities of Five Star Reporting, Inc. (Pl. Ex. G)  Defendants' claim that Plaintiff is somehow responsible for these liabilities based on their mistaken belief that they were not disclosed prior to the sale of Five Star. (Pl. Ex. E ¶¶ 117-138)  Nothing could be farther from the truth.

Principally, Defendants retained an outside expert to review Five Star's records and create a Due Diligence Report outlining, amongst other categories of information, the financial information of the company. (Pl. Ex. I) (Pl. Aff. ¶¶ 39-42)  As such, Defendants' allegations that Five Star's outstanding liabilities were not disclosed is patently false.  Defendants were aware of all tax information and, by extension, indebtedness in advance of the sale of Five Star.  (Pl. Aff. ¶¶ 39-43)  Further, at the closing of the sale, Defendants deducted a portion of the first payments due and owing to each of the three sellers, including Plaintiff, to cover the outstanding liabilities. (Pl. Aff. ¶ 44)

Shortly after the sale of Five Star in August 2010, Defendant Rafkind informed Plaintiff that he never intended to pay Lugo and Militello any part of the $300,000 that was due to each of them under the Share Purchase Agreement. (Pl. Aff. ¶ 46)  A dispute arose between Lugo and Militello and Defendant Rafkind regarding payments under the Share Purchase Agreement.  (Pl. Aff. ¶¶ 46-47)  In light of these concurrent disputes, on or about April 24, 2012, Defendant Rafkind and the two (2) other sellers, Lugo and Militello, executed an agreement entitled "Amendment to Share Purchase Agreement." (Pl. Ex. L)  Plaintiff was privy to the discussions which took place between the parties prior to the execution of this agreement. (Pl. Aff. ¶ 49) Pursuant to this agreement, the $300,000 balance due and owing to Lugo and Militello under the original Share Purchase Agreement was reduced by $45,000 each.  (Pl. Ex. L, pg. 2) (Pl. Aff. ¶ 48)  As such, Defendant Rafkind recovered $90,000 to cover outstanding liabilities. (Pl. Aff. ¶ 48)   This amount was in addition to the money deducted from the first payments made to the sellers. (Pl. Aff. ¶ 44)

During these discussions, Defendant Rafkind covenanted to Plaintiff that he would assume responsibility for any and all remaining liabilities attributable to Five Star and Plaintiff.

(Pl. Aff. ¶ 50)  Plaintiff had previously relinquished her right to the remaining $300,000 owed to her under the Share Purchase Agreement upon execution (an in reliance upon) the Employment Agreement.  (Pl. Ex. A, pg. 2)  Therefore, Plaintiff was assured that she would not be held liable for any additional debts. (Pl. Aff. ¶ 50)

Tellingly, in Defendants' Response to Plaintiff's Second Request for Admissions, Defendants admitted Request Number 33, which stated, "Admit that Michael Rafkind agreed to pay the federal tax bill of Five Star Reporting, Inc. after the sale of Five Star Reporting, Inc." (Pl. Ex. D, pg. 5)

Based on the foregoing, there exists no triable issue of material fact with respect to Defendants' counterclaims.  All outstanding liabilities were either paid for by Plaintiff, Lugo and Militello, or assumed by Defendant Rafkind.

## V.   CONCLUSION

For all the foregoing reasons, the Court should grant Plaintiff's motion for summary judgment in its entirety.

Dated: Bohemia, New York
       May 6, 2014

          ZABELL & ASSOCIATES, PC
          Attorneys for Plaintiff

          By: _____
          Saul D. Zabell, Esq.
          1 Corporate Drive, Suite 103
          Bohemia, New York 11716
          Tel.: (631) 589-7242
          Fax: (631) 563-7475
          szabell@laborlawsny.com